IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DAN COOLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 5:06-CV-01750-RRA |
| ) | |
| HOUCHENS INDUSTRIES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This is a civil action filed by the plaintiff, Dan Cooley, against the defendant, Houchens Industries, Inc. The complaint alleges discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621. The plaintiff also asserts retaliation in violation of 42 U.S.C. § 2000e, *et seq*. The alleged wrongful conduct was demoting the plaintiff, on February 19, 2005, from manager of the Bridgeport, Alabama save-a-lot store to assistant manager of the Ft. Payne, Alabama Sav-a-lot store. The case is presently before the court on the defendant's motion for summary judgment. (Doc. 25.)

### STANDARD OF REVIEW

In conducting [a summary judgment analysis], [the Court must] view all evidence and factual inferences in the light most favorable to the nonmoving party. *Id*. Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment. *Id.*

*Lofton v. Secretary of Dept. of Children and Family Services,* 358 F.3d 804, 809 (11th Cir. 2004).

FACTS

Defendant Houchens owns Sav-A-Lot stores in Alabama in the towns of Bridgeport, Scottsboro, Albertville, and Fort Payne. Each store is located within a defined district and division of Houchens. Store managers report to and are supervised by the appropriate district and division manager, with the division manager being over the district manager.

Plaintiff Cooley has been employed by Houchens for approximately ten years. He is currently the assistant manager of the Sav-A-Lot store in Scottsboro. At all times material herein, Cooley was the manager of the Bridgeport store, and his district and division managers were Shane Johnson and Ronnie Neal, respectively. Cooley was approximately fifty-nine years old at the time of his demotion in 2005. Cooley enjoys working for Houchens. He admits "[i]t's really a great company" and the "best" place he has ever worked. Cooley likes the people with whom he work. During his ten years employment with Houchens, Cooley has never looked for another job.

For the first seven years with the defendant, Cooley held the position of assistant store manager, being assigned at various times to the stores in Scottsboro, Fort Payne, and Bridgeport. During that time, Cooley never applied for or otherwise expressed to Houchens any interest or desire in being promoted to the position of store manager.

In early 2004, Division Manager Neal, who is approximately fifty-four years old and about seven years younger than the plaintiff, promoted him to store manager. For about a week or so after his promotion, Cooley managed the Bridgeport store, where he had been working as the assistant manager, but was then transferred by Neal to manage the Albertville store.

In or around June of 2004, the manger of the Bridgeport store quit. Neal approached Cooley and gave him the option of continuing to manage the Albertville store or returning to Bridgeport as store manager. Cooley chose to return to Bridgeport. The Bridgeport store, however, was in very bad condition and had to be cleaned up by District Manager Johnson. Neal testified at his deposition that all the stores were not yet cleaned up.

As store manager, Cooley admits he oversaw and was responsible for all departments of the store. He agrees that "the job of the manager is to make sure everything is running right." He acknowledges that he was ultimately responsible for everything concerning the store, including payroll, inventory, sales and profits, product ordering, not being over-stocked or out-of-stock, theft prevention, accurate bookkeeping, employee discipline, merchandising, maintaining perishable foods, and store cleanliness. It was Cooley's job to make the store the best it could be.

In addition to being Cooley's district manager, Johnson was also a trainer for the store managers. Johnson taught such things as the proper way to make payroll, to order products, to make the store profitable, to deal with employees, and to merchandise products.

In 2004, after Cooley's promotion to store manager, Johnson supervised Cooley's management of the Bridgeport store. (Cooley Depo. 117-118, 154-156, 172-174, 178, 191.) Johnson visited the Bridgeport store and met with Cooley a couple of times each week. Johnson regularly conducted store "walk-throughs" with Cooley, during which he and Cooley would identify things in the store that needed to be corrected or improved. Neal also regularly visited the Bridgeport store during Cooley's tenure there, and, through Johnson and otherwise, stayed abreast of problems and areas of concern.

Cooley testified that he got along with Johnson "pretty good" and had "no problems with him." (Cooley Depo. 77.) Cooley states that he never had any problem or disagreement with Johnson. *Id.* at 173. Cooley's testimony about Johnson's honesty and trustworthiness was inconsistent. Cooley testified that he thought Johnson was "honest and trustworthy." *Id.* at 174. Elsewhere in his deposition, however, Cooley stated that he "didn't know" if Johnson was honest and trustworthy, and Cooley thought that Johnson had "probably" lied to him about something. *Id.* at 78. Cooley also testified that Johnson was "fair" to him, *id*, and admitted that Johnson, as well as Neal, had tried to help him become the best store manager he could be.

Stephanie Hartman, who also worked at the Bridgeport store, stated that she saw the plaintiff and Johnson "work together putting up displays and stuff." (Hartman Depo. 65.) Amanda Russell, another employee at the Bridgeport store, stated that both Johnson and Neal showed Cooley ways to make the store a better, more successful store. (Russell Depo. 43.) She stated that "they come in and gave him advice about stuff." *Id.*

Cooley recalls Johnson counseling him more than once about the condition of the back room of the store, which was messy and over-stocked. Johnson often told Cooley to "get his back room down." (Cooley Depo. at 118, 154.) Cooley admits that he was instructed to gain control of the back room, and he agrees that he should have done so. Johnson likewise recalls the problems which Cooley had maintaining the back room of the store, and the efforts which he made to help Cooley manage the back room effectively. The condition of the back room, while Cooley was manager, is depicted in a number of photographs submitted by the defendant. Though Cooley states that the problems with the back room were in part due

-4-

to Neal not allowing him to skip a weekly delivery of new products, he acknowledges that, as store manager, he was responsible for the unacceptable conditions of the back room.

Although Cooley does not recall Johnson counseling him about his unsatisfactory performance in other areas of the store, he does not deny that Johnson did so with respect to labor, wages, ordering, store cleanliness, and other such issues.  (Cooley Depo. 154-156.) Neal also had several counseling sessions with Cooley about similar performance issues. Cooley admits that Johnson also counseled him about having out-of-date products on the store shelves.  Cooley also agrees that he was at fault in failing to comply with Houchens' policy regarding rotation of out-of-date products, and that Johnson's warning to him about this was justified.  Johnson testified:

> I could have suspended him, but I didn't want to get him in a submission hold.  I wanted to still train him, to still work with him.  I mean $667 is a lot of out of dates.  Most people would have probably been terminated for it. But I wanted to give him a chance to do better.

(Johnson Depo. 40-41.)

In December of 2004, three female employees of Cooley's store — Stephanie Hartman, Amanda Russell, and Mandy Steele — met with Neal to complain to him about a number of things involving Johnson's wife, Tabitha, who worked in the office of the Bridgeport store. In addition to telling Neal about things Tabitha was allegedly doing with their work schedules and hours, they told him that Tabitha and another Houchens' employee, Patrick Poore, were having a consensual affair and that Russell had observed them having sex inside the milk cooler of the Bridgeport store. Neal was informed about an alleged "sex calendar" which

Tabitha and others maintained in the store office, on which they would record the dates of their sexual encounters.[1]

Ronnie Neal "belittled" Cooley, whatever that means, in front of everybody at a store meeting he called about a week after he met with Hartman, Russell, and Steel. (Hartman Depo. 66-67.) Neal told him about his meeting with Hartman, Russell, and Steele.[2] Cooley knew nothing about their allegations. He did not believe them, and he had no facts upon which to base a belief that their assertions were true. Nevertheless, Cooley investigated, but found no witnesses or evidence to corroborate the story about Tabitha Johnson and Poore.

Cooley testified that in or about January, 2005, Shane Johnson told him to fire the three women who had complained to Neal. (Cooley Depo. 261-62.) Cooley would not do it, because he "wasn't going to run these girls off because they had gone and told the situation

---

[1] Amanda Russell saw Tabitha Johnson having sex in the meat cooler at Cooley's store. Russell told Hartman, who called the 1-800 corporate office number to report the situation. Houchens provides the number to Sharon Grooms' office to report sexual harassment or hostile environment. The person to whom Hartman spoke called her back and told her that everything had been routed to Ronnie Neal. Hartman called Ronnie Neal later that day to set up a meeting with him that took place two or three days later.
 Neal and his wife met with Stephanie Hartman, Amanda Russell, and Mandy Steele at a restaurant to discuss their concern about the relationship between Tabitha Johnson and Poore, the sex calendar, and other things going on at the store. Neal agreed that employees were certainly invited to call the human resource department if they felt like there was conduct subject to Houchens' sexual harassment policy. Neal contacted Sharon Grooms at human resources to report the complaints and get her advice about what to do, which was to investigate and remove Shane Johnson as supervisor of that store. Neal testified that he talked to Cooley, Shane Johnson, Tabitha Johnson, and the three female employees, among others, as part of his investigation.

[2] It is unclear if Neal said this to Cooley at the same meeting in which he belittled him, or at some other time.

there."[3] *Id.* at 263. Hartman testified that when she spoke with Cooley after the December 2004 meetings, he told her that "they want me to get rid of you." (Hartman Depo. 121-22.) Shane Johnson testified that the assertion that he told Cooley to fire the three women is a "lie." (Johnson Depo. 69-70.) Neal stated he was not aware that Shane Johnson told Dan Cooley to get rid of the female employees. (Neal Depo. 100.) Neal was aware that the female employees left shortly after the event occurred. *Id.* Ronnie Neal told Johnson about the allegations about Tabitha and the "sex" calendar. *Id.* at 58-60. Neal also told Johnson that he had talked to the three "girls" about what happened. *Id.* at 61.

     Cooley acknowledges that when Neal demoted him, Neal had no knowledge that Johnson had allegedly instructed him (Cooley) to fire Hartman, Russell, and Steele. In fact, there is no evidence that Neal discussed the plaintiff with either Tabitha Johnson or Helen Mabe, or that Neal otherwise involved them in any way in his decision to demote Cooley. To the contrary, the evidence is that Neal discussed the matter only with one of his other district managers, Eddie Hill.

     In early 2005, Johnson continued to observe and counsel Cooley about a number of problem areas in the store, including the fronting of products on shelves, signage issues, out-of-date products, merchandising, etc. Though Cooley does not recall this particular counseling, he does not deny it, and thus it is not contradicted. Neal admitted that he went to Cooley around January of 2005 and told Cooley that he had thirty days to show that he could manage the store. Neal gave "store conditions" as the reason for this demand, and

---

[3]For Cooley to state both that they "reported the situation there" and that he did not believe their stories seems inconsistent. Both parties, however, submitted this evidence.

Neal stated that this conversation occurred shortly after he removed Shane Johnson on January 7, 2005. Neal did not document the thirty-day ultimatum he gave to Cooley because "we are an ESOP company.[4] It would have very easy to build a paper trail on Dan and Dan would no longer be with us."

Houchens engages the services of an independent auditor to check inventory periodically. Such an audit was performed in Cooley's store on or about January 30, 2005. The audit revealed that Cooley's inventory was short approximately $20,000. Neal had knowledge of these audit results when, several days later, he decided to demote Cooley. (Neal Depo. 144-145.) Though Cooley does not recall that inventory audit, he does not deny it. More important, Cooley agrees that (a) as manager of the store, he was responsible for the inventory shortage, (b) a $20,000 deficit in inventory is a serious thing, and (c) given the results of the inventory audit, a reasonable person could question whether he was qualified to lead and manage the store. Neal testified that he never spoke to Cooley about the shortage even though Neal knew about it before demoting Cooley. At some point, Shane Johnson told Cooley that Cooley's store had "put a lot of money on the bottom line." (Johnson Depo. 90-91.)

On or about February 19, 2005, Neal made the decision to demote Cooley to the position of assistant store manager and re-assign him to the Fort Payne store. Neal did not testify that he demoted Cooley specifically because of the inventory shortage, but claimed it was "just one of the things." Neal met with Cooley that day and advised him of his decision,

---

[4]The record does not indicate what being "a ESOP company" means.

telling him that his job performance as store manager had not been satisfactory. Cooley asked Neal if it would be possible for him to return later to the position of store manager, and he Neal replied that "time has run out on you, Dan." Cooley speculates that Neal's statement was a reference to Cooley's age, but he admits it is possible that this is not what Neal meant. Neal admits making that statement to Cooley, but explains that he was expressing only the fact that he had spent all the time he could afford, about twelve months, attempting to train Cooley to be a good store manager. David Pearson, who was assistant manager at the Bridgeport store, replaced Cooley. Pearson was then approximately twenty-three years old. It is undisputed that Neal asked Cooley "how old he was" on at least four separate occasions prior to demoting him. (Cooley Depo. 242.)

While Cooley was manager of the Bridgeport store, Helen Mabe worked with Tabitha Johnson in the store office. Hartman and Russell heard Tabitha Johnson and Helen Mabe refer to Cooley as being "too old." However, neither Tabitha Johnson nor Helen Mabe had any decision-making authority over Cooley. Hartman and Russell state they never heard any of Cooley's supervisors, including Neal and Johnson, say anything about Cooley's age. At the time he made the decision to demote Cooley, Neal had eighteen store managers in his division. Twelve (or sixty-six per cent) of those managers were over the age of forty.

Cooley cites the following four facts to support his contention that age was the reason for his demotion: (a) a younger person, Pearson, replaced him as store manager; (b) Neal's statement that time was running out on him; (c) on four occasions in 2004, Neal allegedly inquired of him about his age; and (d) several months after this lawsuit was filed, Hartman allegedly told him that she had heard Neal and Johnson refer to him as being old and senile.

Alan Bynum was the manager of the Albertville store in March and/or April of 2005. Bynum was told by Randall Steed, his district manager, that Dan Cooley was being transferred to Bynum's store. Steed told Bynum that there were issues at Cooley's store, and to document and detail Cooley's work performance. Steed told Bynum to "turn up the heat" on Cooley. Steed reiterated these statements on several occasions. Ronnie Neal also asked Bynum to monitor closely Cooley's performance and to document and detail everything.

## ANALYSIS

### *The Age Discrimination Claim*

Under the Age Discrimination in Employment Act, codified at 29 U.S.C. §621 *et seq.*, "the plaintiff's age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). A plaintiff claiming age discrimination can prove his case through direct or circumstantial evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). This is not a direct evidence case of age discrimination, as the plaintiff's brief clearly and correctly bases his argument on circumstantial evidence.

To evaluate circumstantial evidence in age discrimination cases, the Eleventh Circuit uses a modified form of the familiar *McDonnell Douglas* test. Under that modified form, a plaintiff establishes a prima facie case of age discrimination based on circumstantial evidence by demonstrating that, among other things, he was qualified to do the job. *See e.g.*, *Thomas v. Aventis Pharmaceutical, Inc.*, 177 Fed. Appx. 54, 55-56 (11th Cir. 2006) (citations omitted); *Schweers*, 132 Fed. Appx. at 324; *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432

(11th Cir. 1998). Summary judgement against the plaintiff is appropriate if he fails to demonstrate that he was qualified to do the job. *See e.g.*, *Turlington*, 135 F.3d at 1433 (*citing Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1520-21 (11th Cir. 1990) (per curiam).

If the plaintiff establishes a prima facie case of age discrimination, then the burden shifts to the defendant to "articulate a legitimate, non-discriminatory reason for the challenged employment action." *Schweers*, 132 Fed. Appx. at 325 (*quoting Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). *See also Thomas*, 177 Fed. Appx. at 56. The defendant's burden is "merely one of production; it need not persuade the court that it was actually motivated by the proffered reason. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Schweers*, 132 Fed. Appx. at 325 (*quoting Chapman*, 229 F.3d at 1024)).

If the defendant satisfies its burden of production, the plaintiff must come forward with sufficient evidence "to permit a reasonable fact finder to conclude that the reason given by the [defendant was pretextual, meaning that it was] not the real reason for the adverse employment decision." *Thomas*, 177 Fed. Appx. at 56 (*quoting Chapman*, 229 F.3d at 1024)).

<u>The plaintiff has established a prima facie case of age discrimination</u>: A plaintiff who fails to demonstrate that he was qualified to perform the position from which he was demoted cannot establish a prima facie case of age discrimination. The defendant argues that Cooley was not qualified for the job of store manager. He states:

> Herein, the record evidence affirmatively proves that notwithstanding almost a year of Houchens counseling, training, and helping him to be an effective store manager (things which he candidly admits Neal and Johnson both did), Cooley failed to meet

> Houchens' performance expectations of him. From his admitted failure to gain control of the back room of his store and problems with out-of-date product on his store's shelves, to the counseling which he does not deny he received about his unsatisfactory performance with respect to labor, wages, ordering, store cleanliness, merchandising, and other such issues, Cooley clearly failed Houchens' established business policy of the duties and responsibilities of its store managers. Perhaps the most glaring of his failures, however, is the undisputed $20,000 inventory shortage which Houchens and Neal learned just several days before Cooley's demotion. Cooley confesses that as manager of the store, he was responsible for this serious inventory shortage, and he candidly admits that based on it, a reasonable, rational person could question whether he was qualified to be a store manager.
>
> Houchens submits that when all of this record evidence is taken as a whole, a reasonable trier of fact could not conclude that Cooley was qualified for the position of store manager. Accordingly, there is no genuine issue for trial about this, which precludes Cooley from establishing a prima facie case of age discrimination by circumstantial evidence, so Houchens is entitled to summary judgment. *See e.g.*, *Bryant v. Cruises, Inc.*, 6 F. Supp. 2d 1314, 1317 (N.D. Ala. 1998) (*quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) ("[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.")); *Pouncy v. Vulcan Materials Co.*, 920 F. Supp. 1566, 1571 (N.D. Ala. 1996) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (a dispute is not genuine if the evidence is such that a reasonable jury could not return a verdict for the non-moving party.)).

(Def.'s Br. 19-20.)

The plaintiff responds as follows:

> Concerning whether a plaintiff is qualified, the Eleventh Circuit has recognized that a plaintiff need only show that he is presumptively qualified for a position by training or experience. *See Walker v. Mortham*, 158 F.3d 1177, 1189 (11th Cir. 1998). An individual of about 59 years, Cooley was otherwise qualified to be a store manager. Cooley has been employed by Defendant for approximately 10 years, spending about 7 years as assistant manager. (DX A, Depo. of Cooley, pp. 40, 59, 64-73). Cooley was promoted to store manager in February of 2004, ending up at Bridgeport. (DX A, Depo. of Cooley, pp. 102-103). Shane Johnson was responsible for training Cooley in his managerial duties. (DX D, Depo. of Shane Johnson, 22-23). Accordingly, Cooley was presumptively qualified by training and experience.

(Pl.'s Resp. 26-27.)

Concerning presumptive qualifications, the plaintiff cites *Walker v. Mortham*, 158 F.3d 1177 (11th Cir. 1998), which states, "As a woman, Ms. East is in a group protected by Title VII. She formally applied for a welding job and was at least presumptively qualified on the basis of an application which showed a long history of welding work." *Id.* at 1189. The Eleventh Circuit has specifically noted the lightness of the burden on the plaintiff at this stage of the analysis:

> In order to establish a prima facie case, Mr. Wright is not required to prove that he was the most qualified applicant for the position, but only that his background was such that he was at least presumptively qualified for the job he sought. *East v. Romine, Inc., supra*. The burden of the plaintiff at this stage of the litigation process is not an onerous one. *Texas Department of Community Affairs v. Burdine, supra*, 450 U.S. at 253, 101 S.Ct. at 1094.

*Wright v. Western Elec. Co., Inc.*, 664 F.2d 959, 964 (5th Cir. 1981).[5]

However, "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Thomas*, 177 Fed. Appx. at 57 (*quoting Chapman*, 229 F.3d at 1030). An "employer may [demote] an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, so long as its action is not for a discriminatory reason." *Id.* at 57 (*quoting Damon*, 196 F.3d at 1363 n.3).

In the instant case, the defendant had determined that Cooley was qualified to be store manager. The defendant's determination that Cooley was qualified to be store manager lies in the fact that Houchens made the plaintiff store manager. Cooley was not given the job conditionally on a try-out basis or subject to him proving that he could handle it. It is

---

[5]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

therefore, deemed that Cooley was qualified for the position of manager. The defendant's proffer that Division Manager Neal later determined, based on Cooley's actual work performance, that Cooley could not handle his new job, raises what the court believes is the more correct issue, which is whether the defendant's legitimate, non-discriminatory reason to demote the plaintiff from store manager — job performance — was pretextual.

<u>The plaintiff has not established that the defendant's articulated reason for Cooley's demotion is a pretext for age discrimination</u>: To prove pretext, Cooley must present evidence sufficient to permit a reasonable fact finder to conclude that Houchens' articulated reason for demotion was not the real reason for his demotion. *Schweers*, 132 Fed. Appx. at 325 (*citing Chapman*, 229 F.3d at 1024). "[A] reason cannot be proved to be a pretext *for discrimination* unless it is shown both that the reason was false, *and* that discrimination was the real reason." *Id.* (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752, 125 L. Ed. 2d 407 (1993) (quotation omitted)).

In the context of a summary judgment analysis, this means that the plaintiff must "reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the [defendant's] proffered legitimate reason for its action that a reasonable fact finder could find it unworthy of credence." *Monaco v. Tanning Research Laboratories, Inc.*, 220 Fed. Appx. 896, 898 (11th Cir. 2007) (*quoting Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005)); *Tran*, 190 Fed. Appx. at 933 (<u>quoting</u> *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation and internal quotation marks omitted)).

In arguing that the defendant's claimed non-discriminatory reason for the demotion was actually a pretext for *age* discrimination, the plaintiff merely adopts his argument that the articulated reason was a pretext for *retaliation*. (Def.'s Br. 28.) The plaintiff states:

> Plaintiff re-states his arguments for pretext for retaliation set out supra. Plaintiff contends that the circumstantial evidence overwhelmingly undermines Defendant's claimed legitimate reason. In addition to his prima facie case, Cooley contends that the totality of the circumstances yields a sufficient basis to draw a reasonable inference of pretext, and thus the ultimate issue of age discrimination. Summary judgment should therefore be denied.

(Resp. Br. 28.)

It is determined that the evidence of Cooley's admissions about his weak job performance, his counseling from Neal and Johnson, his stated failures regarding certain of his duties and responsibilities as store manager, and his admission that the $20,000 inventory shortage on January 30, 2005 was his responsibility and he can understand that such loss could cause reasonable people to question his ability to be a store manager, would not allow a reasonable fact finder to conclude that the defendant's proffer of unsatisfactory job performance as being unworthy of credence.

Further, the plaintiff has not presented evidence sufficient to support a finding that Cooley's age was the real reason for his demotion. Neither the stray inquiries which he attributes to Neal about his age, nor Neal's statement to him that time had run out on him, are sufficient to prove actual knowledge and intent to discriminate. *See e.g., Murray v. Attorney General, USA*, 2007 U.S. App. LEXIS 11473, *3 (11th Cir. 2007) ("[d]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent.") (citation omitted)). Finally, it was Neal who decided, less than a year earlier, to promote

Cooley to the position of store manager.[6] Summary judgment for the defendant is due on this claim.

## *The Title VII Retaliation Claim*

Title VII's retaliation provisions contain both an "opposition" and a "participation" clause. A plain reading of Cooley's complaint shows that his retaliation claim is premised upon Title VII's "opposition" clause, which prohibits an employer from retaliating against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. §2000e-3(a). In other words, the plaintiff contends that he was demoted because of his alleged refusal to terminate Hartman, Russell, and Steele for their alleged complaint about sexual harassment.

<u>Cooley cannot establish a prima facie case of a retaliatory demotion</u>: To establish a prima facie case of retaliation under Title VII's opposition clause, Cooley must show, among other things, that a causal connection exists between his demotion and his alleged Title VII protected activity (*i.e*., his alleged refusal to terminate Hartman, Russell, and Steele for their alleged complaint about sexual harassment). *See e.g.*, *Hunt v. Gonzales*, 2007 U.S. App. LEXIS 1962 *7 (11th Cir. 2007) (*quoting Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)); *Brungart v. Bellsouth Telecommunications, Inc.*, 231 F.3d 791, 798 (11th Cir. 2000) (citations omitted). To establish a causal connection, the plaintiff must show "that [his alleged] protected activity and [demotion] were not wholly unrelated." *Brungart*, 231

---

[6]The alleged remarks by Tabitha Johnson and Helen Mabe are inadmissible hearsay. Also, Cooley's statement that Hartman recently told him that she had heard Neal and Johnson refer to the plaintiff as being old and senile is inadmissible hearsay. (Hartman herself testified that she never heard Neal and Johnson say anything about Cooley's age.)

F.3d at 799 (*quoting Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (internal quotations omitted)). The plaintiff must show that the decision-maker was aware of his alleged protected activity at the time he demoted him. *See e.g.*, *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) ("in a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression.") This requirement, which rests upon common sense, reflects the truth that a decision-maker cannot be said to have been motivated to retaliate based upon something that was unknown to him. Though close temporal proximity between the employee's protected conduct and the adverse employment action may be sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection, see *Gupta*, 212 F.3d at 590; *Bechtel Constr. Co. v. Secretary of Labor*, 50 F.3d 926, 934 (11th Cir. 1995)), temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision-maker did not have knowledge that the employee engaged in protected conduct. *See Clover*, 176 F.3d at 1355-56; *Hunt*, 2007 U.S. App. LEXIS at *7 (*quoting Brungart*, 231 F.3d at 799); *Hudson v. Southern Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir. 1988) (affirming grant of summary judgment to the defendant on retaliatory discharge claim where there was uncontradicted evidence that the decision-makers were unaware of the plaintiff's threat to file an EEOC charge); *McCollum v. Bolger*, 794 F.2d 602, 610-11 (11th Cir. 1986) (affirming judgment for the defendant and holding that the plaintiff failed to prove a prima facie case

of retaliation where evidence at trial showed that the decision-maker did not know that the plaintiff was engaging in protected conduct).

Plaintiff Cooley cites no evidence that Neal, the decision-maker in this case, had any knowledge that Johnson instructed Cooley to terminate Hartman, Russell, and Steele. Neal stated he was not aware that Shane Johnson told Dan Cooley to get rid of the female employees. (Neal Depo. 100.) Further, the plaintiff testified:

> Q. . . . Did Ronnie [Neal] ever instruct or direct you to do anything to those three girls, the get rid of them?
>
> A. No, sir. He didn't, no sir.
>
> Q. And did Ronnie do anything to retaliate against you for you not firing them?
>
> A. He demoted me.
>
> Q. At the time he demoted you, did he know that you had been told to fire them?
>
> A. No, sir.

(Cooley Depo. 282-283.)

The plaintiff cites the *Brungart* case, and argues:

> A defendant's awareness of protected conduct may be proved by circumstantial evidence. *Brungart*, 231 F.3d 791.
>
> As argued supra, Houchens should be liable for the actions of its agent Shane Johnson under agency principles. Shane Johnson was aware of Cooley's protected activity, because he was the person who instructed Cooley to fire the women in the first place. The evidence further shows that a reasonable person could conclude that Mr. Neal was acutely aware of the situation and thus knew about Cooley's protected activity. Neal heard the allegations about sexual activity at the store. He had talked with Shane Johnson about it. He called a store meeting about it, at which he referred to his relationship with Shane Johnson as being like his relationship with God and belittled Cooley. Shortly thereafter, he gave Cooley his undocumented 30-day warning and subsequently demoted Cooley.
>
> Neal's 30-day warning to Cooley is not documented. Defendant cites poor performance, but only submits a write up from August 17 of 2004, (DX H), out of

> context photographs (DX G), Shane Johnson's purported walk-through list dated 1/5/05, (DX I), and the purported audit report from January, 2005 (DX K). If these are what motivated Neal, then why did he not even make some kind of note about them or otherwise document his warning to Cooley or talk with him about the inventory shortage? The reasonable conclusion is that Neal did know about Johnson's statements to Cooley, and set up an excuse to demote Cooley after a 30 day warning.
>
> Defendant should not be able to hide behind subjective criteria when it has not produced objective evidence showing that Cooley's performance was worse than other managers, or some other quantifiable means of objectively evaluating his performance. Plaintiff submits that the documentation submitted by Defendant is insubstantial and mostly useless by itself, leaving Defendant with only a subjective reason to offer in response to the circumstantial evidence showing retaliation or discrimination.
>
> Further, Alan Bynum's affidavit shows Houchens' retaliatory intent toward Cooley after he was demoted to assistant manager. (PX 1, Aff. of Bynum). According to Bynum, he was told to turn up the heat on Cooley and document and detail his work performance. (PX 1, Aff. of Alan Bynum). Bynum understood this to mean that Houchens wanted to make Cooley's work conditions so difficult that he would voluntarily quit. (PX 1, Aff. of Alan Bynum). This shows Houchens' continued policy, plan or intent to retaliate against Cooley and get rid of him.
>
> Under these circumstances, it is entirely reasonable to infer that Neal was acutely aware of the situation and was thus aware of both Johnson and Cooley's actions. The evidence further shows close proximity between the protected activity or opposition and the adverse employment action. The women complained to Neal in December, 2004. Johnson told Cooley to fire them in January, 2005. Neal gave Cooley his 30-day ultimatum in January of 2005, and demoted him in February, 2005. Accordingly, the evidence shows a material issue of fact as to causation, pretext, and the ultimate issue of retaliation for protected activity.

(Pl.'s Br. 20-22.)

*Brungart* does not allow the inference Cooley seeks. It states:

> The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection. *See Gupta*, 212 F.3d at 590; *Bechtel Constr. Co. v. Secretary of Labor*, 50 F.3d 926, 934 (11th Cir.1995) ("Proximity in time is sufficient to raise an inference of causation.") However, there is this exception: temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct. *See Clover*, 176 F.3d at 1355-56. In *Clover* the plaintiff, who brought a Title VII retaliation claim, had been informed the day after she engaged in protected conduct that she was going to be terminated, and later she was terminated. *Id*. at

-19-

> 1349. Notwithstanding the close temporal proximity between the protected conduct and the initial decision to terminate the plaintiff, we reversed the district court's denial of the defendant's motion for judgment as a matter of law on the retaliation claim. *See id*. at 1355-56. We did so because the plaintiff "failed to present sufficient evidence to establish that [the decision maker] was aware of her protected conduct." *Id*. at 1356. Exactly the same situation is before us in this case, and the *Clover* decision compels the same result.

*Brungart v. BellSouth Telecommunications,* Inc. 231 F.3d 791, 799 (11th Cir. 2000).

Since it is uncontroverted that Neal did not know about the instruction to fire the three employees, it necessarily follows that Neal did not know of Cooley's alleged opposition to it. Therefore, there is no genuine issue of material fact as to the existence of a causal connection between Cooley's demotion and his alleged protected activity, and Cooley has failed to establish a prima facie case of retaliation under Title VII. Houchens is entitled to summary judgment on this claim.

## CONCLUSION

Based on the foregoing, the motion for summary judgment is due to be GRANTED as to all claims. A final order will be entered in accordance with this memorandum opinion.

DONE this 1st day of July, 2008.

_____
Robert R. Armstrong, Jr.
United States Magistrate Judge